UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| D & M IRON HORSE INN, LLC, | ) | CIV. 11-5075-JLV |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER |
| vs. | ) | |
| | ) | |
| UNITED FIRE & CASUALTY | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## INTRODUCTION

This case centers around a massive rain and hail storm which hit Deadwood, South Dakota, on August 3, 2010.  Plaintiff D & M Iron Horse Inn, LLC, brought this breach of contract claim against its insurer United Fire & Casualty Company after the insurer refused to cover plaintiff's storm related damages.

In support of their motions, the parties submitted portions of the policy which is the subject of this litigation.  The complete "Commercial Property Policy" is beneficial in analyzing the issues.  (Docket 36-1).  For continuity, the court will cite to the complete policy.

## PENDING PRETRIAL MOTIONS

Pending before the court are a number of pretrial motions.  Those motions include:

1.      Plaintiff's motion for pre-trial ruling on interpretation of policy (Docket 22);

2.      Plaintiff's motion *in limine* to exclude evidence or argument that the water exclusion applies to preclude coverage (Docket 35);

3.      Plaintiff's motion regarding special interrogatories to the jury (Docket 37);

4.      Defendant's motion *in limine* to exclude evidence or argument that section D ("additional coverage – collapse") of the policy applies (Docket 43);

5.      Defendant's motion *in limine* to exclude as evidence plaintiff's proposed exhibits 6 (watervideo1) and 7 (watervideo2) (Docket 46); and

6.      Defendant's motion *in limine* to exclude evidence or argument of damages and plaintiff's proposed exhibit 4 (Docket 48).

## ANALYSIS

In this diversity jurisdiction case, South Dakota law governs the interpretation of the policy.  Secura Ins. v. Horizon Plumbing, Inc., 670 F.3d 857, 861 (8th Cir. 2012) ("State law governs the interpretation of insurance policies when federal jurisdiction is based on diversity of citizenship.").  In South Dakota, "insurance contract interpretation is a question of law . . . [for which the Supreme Court of South Dakota has] developed 'special rules of construction. . . .' "  Cornelius v. National Casualty Co., 813 N.W.2d 167, 169 (S.D. 2012) (internal citation omitted).  "If the rules of interpretation leave a genuine uncertainty as to which of two or more meanings is correct, the policy is ambiguous.  Ambiguity in an insurance policy is determined with reference to the policy as a whole and the plain meaning and effect of its words."  Id.  "If

the provisions of an insurance policy are ambiguous [the court applies] the rule of liberal construction in favor of the insured and strictly against the insurer." Id. at 170 (internal quotation marks omitted).  This approach, however, does not mean that "the court may seek out a strained or unusual meaning for the benefit of the insured."  Id. (internal quotation marks and citation omitted). When, as in the present case, "an insurer invokes a contract exclusion to disallow coverage, the insurer has the burden of proving the exclusion applies." Auto-Owners Ins. Co. v. Hansen Housing, Inc., 604 N.W.2d 504, 509 (S.D. 2000) (internal quotation marks omitted).

Each of the parties' motions will be addressed separately.

## I.   PLAINTIFF'S MOTION FOR PRE-TRIAL RULING ON INTERPRETATION OF POLICY

Plaintiff's motion is broken down into two parts.

1.   Whether a purported modification to the policy, which specifically says it applies to modify the "Standard Form," applies to the "Special Form" purchased by the Plaintiff.

(Docket 23 at p. 1).  Plaintiff argues the "Causes of Loss - Special Form" portion of the policy provides coverage for its claim. Id. at p. 8.  That provision provides:

> A.   **Covered Causes of Loss**
>
> When Special is shown in the Declarations, Covered Causes of Loss means Risks Of Direct Physical Loss unless the loss is:
>
> 1.   Excluded in Section **B**., Exclusions; . . .
>
> that follow.

3

B.   **Exclusions**

1.   We will not pay for loss or damage caused directly or indirectly by any of the following.  Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. . . .

g.   **Water**

(1)   Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not . . . .

(Dockets 36-1 at pp. 47-48) (bold in original).

Plaintiff argues "if the weight of the hail caused the window to collapse, rather than the weight of water, then the loss is covered."  (Docket 23 at p. 9). Plaintiff believes "[t]he adjuster's admissions (by deposition) are an important fact for the Court to consider, because the company's own construction of the policy is given particular weight, especially if it is favorable to the insured." Id. at p. 14 (referencing Overfield v. American Underwriters Life Ins. Co., 614 N.W.2d 814, 819 (S.D. 2000) (other references omitted).

Defendant relies on the Water Exclusion Endorsement of the policy to deny plaintiff's claim.  (Docket 25).  That provision provides:

THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY

WATER EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

4

COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

**A.**  The exclusion in Paragraph **B**. replaces the **Water** Exclusion in this Coverage Part or Policy.

**B.**  **Water**

1.  Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);

. . .

5.  Waterborne material carried or otherwise moved by any of the  water referred to in paragraph 1., . . . or material carried or otherwise moved by mudslide or mudflow.

This exclusion applies regardless of whether any of the above, in Paragraphs 1. through 5., is caused by an act of nature or is otherwise caused.  An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water. . . .

(Dockets 36-1 at p. 57) (bold in original).

Defendant argues "[a]s the water accumulated in the stairwell . . . one of the basement windows eventually broke due to the horizontal pressure from the water (i.e. the window did not break due to the pressure from the hail). Rainwater and hail then flowed into the basement . . . through the broken window."  (Docket 25 at p. 5).

Plaintiff argues the Water Exclusion Endorsement does not apply because the Iron Horse Inn purchased the "Special Form" not a "Standard

Property Policy." (Docket 23 at p. 12).  The October 1, 2009, declarations pages

explicitly denote the policy as "COMMERCIAL PROPERTY COVERAGE PART."

(Docket 36-1 at pp. 5-6).  The Water Exclusion Endorsement contains the same

language, specifically stating the endorsement modifies the "COMMERCIAL

PROPERTY COVERAGE PART." (Docket 36-1 at p. 57).  The Water Exclusion

Endorsement specifically states the endorsement modifies the "Commercial

Property Coverage Part" of the policy, and the top-right corner of the "Causes of

Loss-Special Form" page clearly identifies that portion of the policy as

"Commercial Property." Id. at p. 47.

Viewing the entire policy objectively and using the plain and ordinary

meaning of the policy, the Water Exclusion Endorsement applies to and

supersedes the "Causes of Loss-Special Form" portion of the policy.  Cornelius,

813 N.W.2d at 169.  This language is clear and unambiguous.  "A contract is

not rendered ambiguous simply because the parties do not agree on its proper

construction or their intent upon executing the contract." Roseth v. Roseth,

829 N.W.2d 136, 142 (S.D. 2013) (internal citations omitted).  The language of

the Water Exclusion Endorsement modifies and replaces the "Causes of Loss-

Special Form" provision and applies to this case.

> 2.   Whether the endorsement, if it applies here at all, operates to
>      exclude hail when surface water carried the hail stones to the
>      *exterior* of the building, but did not carry it inside the building.
>      In other words, if the hail piled up to such a depth that it
>      caused a basement window to collapse inward, and the hail
>      poured into the building through the open window *without*

> *being carried by water, does the exclusion for damage caused by*
> *water still apply?*

(Docket 23 at p. 5) (emphasis in plaintiff's brief).  United Fire agrees there is an

interpretation of the policy which provides coverage.  "If Plaintiff's damages

were caused solely by hail and the weight of the hail alone caused the window

to break, then Defendant agrees . . . that the . . . exclusion would not apply."

(Docket 25 at p. 9).  "[I]f hail was the *sole* cause of the broken window, and it

was *only* hail (and no water) that caused damage to Plaintiff's basement, then

the policy provides coverage to Plaintiff."  Id. (emphasis in original).  This issue

is a factual dispute which must be resolved by the jury at trial.

Plaintiff's motion for a pre-trial ruling on the interpretation of the policy

(Docket 22) is granted in part and denied in part consistent with the above

rulings.

II.    **PLAINTIFF'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OR
       ARGUMENT THAT THE WATER EXCLUSION APPLIES TO
       PRECLUDE COVERAGE**

Plaintiff moves the court to enter an order excluding evidence or

argument that the general exclusion for water-flood damage contained in

Section B.1.g. applies to bar coverage in this case under Section D "Additional

Coverage – Collapse."  (Dockets 35 & 36 at p. 3).  Plaintiff argues the

"Additional Coverage" for "Collapse" set forth in Section D of the policy is

independent coverage and is not subject to the general exclusions (such as the

water-flood exclusion) provided in Section B of the policy.  Id. at pp. 3-4.

United Fire's initial "grant of coverage" appears in Section A, and that Section explicitly says that the exclusions in Section B apply to that coverage.  The "Additional Coverage – Collapse," is added later, in Section D.  Nothing in any provision of the policy says that the general exclusions in Section B apply to the Additional Coverage – Collapse, in Section D.  In fact, Section D contains its own limitations.  If United Fire meant for the Section B exclusions to apply to Section D, it had many opportunities to say so. It didn't. . . . Section A provides "all-risk" coverage, whereas Section D provides "specified peril" coverage.

Id. at pp. 20-21.

As mentioned above, Section A, "Covered Causes of Loss" states: "When Special is shown in the Declarations, Covered Causes of Loss means Risks Of Direct Physical Loss unless the loss is: 1. Excluded in Section B., Exclusions . . . ." (Docket 36-1 at p. 47) (bold removed).  Section B.2.k makes reference to "collapse":

> 2. We will not pay for loss or damage caused by or resulting from any of the following:
>
> . . .
> k. Collapse, including any of the following conditions of property or any part of the property:
>
> > (1) An abrupt falling down or caving in;
> >
> > (2) Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or
> >
> > (3) Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to (1) or (2) above.
>
> But if collapse results in a Covered Cause of Loss at the described premises, we will pay for the loss or damage caused by that Covered Cause of Loss.

8

This exclusion, k., does not apply:

> (a) To the extent that coverage is provided under the Additional Coverage – Collapse; or
>
> (b) To collapse caused by one or more of the following:
>
> > (i)    The "specified causes of loss";
> >
> > (ii)    Breakage of building glass . . . .

(Docket 36-1 at pp. 49-50).  Section D of "Causes of Loss-Special Form" states:

> D.    Additional Coverage – Collapse
>
> The coverage provided under this Additional Coverage – Collapse applies only to an abrupt collapse as described and limited in D.1 through D.7.
>
> 1.    For the purpose of this Additional Coverage – Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.
>
> 2.    We will pay for direct physical loss or damage to Covered Property, caused by abrupt collapse of a building or any part of a building that is insured under this Coverage Form or that contains Covered Property insured under this Coverage Form, if such collapse is caused by one or more of the following:
>
> > . . . .
> >
> > d.    Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs after the construction, remodeling or renovation is complete, but only if the collapse is caused in part by:

(1)   A cause of loss listed in 2.a or 2.b;

(2)   One or more of the "specified causes of loss";

(3)   Breakage of building glass . . . .

3.   This Additional Coverage – Collapse does not apply to:

a.   A building or any part of a building that is in danger of falling down or caving in;

b.   A part of a building that is standing, even if it has separated from another part of the building; or

c.   A building that is standing or any part of a building that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.
. . . .

8.   The term Covered Cause of Loss includes the Additional Coverage – Collapse as described and limited in D.1. through D.7.
. . . .

G.   Definitions
. . . .

2.   "Specified causes of loss" means the following: . . . hail . . . weight of snow, ice or sleet; water damage. . . .

(Docket 36-1 at pp. 53-56) (bold removed).

Defendant argues Section D.8 specifically "incorporates the entirety of

Section D ('Additional Coverage – Collapse') into the 'Covered Causes of Loss' in

Section A . . . ."  (Docket 42 at p. 2).  "Section D is incorporated into the

'Covered Causes of Loss' in Section A, and therefore, is subject to the

exclusions in Section B as Section A provides for coverage 'unless the loss is:

Excluded in Section B., Exclusions.' "  Id.   Because of this integration,

defendant argues, "the 'Water Exclusion' is applicable to the facts of this case."

Id.

However, the Water Exclusion Endorsement specifically replaces only the

Water Exclusion of Section B.  "The exclusion in Paragraph B. replaces the

Water Exclusion in this Coverage Part or Policy."  (Docket 36-1 at p. 57,

paragraph A) (bold removed).  The Water Exclusion Endorsement did not

modify the remaining portions of B.1:

> a.     Ordinance or Law;
>
> b.     Earth Movement;
>
> c.     Government Action;
>
> d.     Nuclear Hazard;
>
> e.     Utility Services;
>
> f.     War and Military Action; and
>
> h.     Fungus, Wet Rot, Dry Rot and Bacteria.

Id. at pp. 47-49.  Likewise, the Water Exclusion did not modify Section B.2,

which identifies separate losses which would not be covered in the event of

loss.  Id. at pp. 49-50.  It is in Section B.2.k where the collapse exclusion

appears.  Id. at p. 50 (see paragraph B.2.k.).  But, Section B.2.k declares the

11

collapse exclusion is preempted: "<u>this exclusion k. does not apply . . . (a) to the</u> <u>extent that coverage is provided under the Additional Coverage – Collapse</u> <u>section</u>." (emphasis added).  That section provides exclusion k. does not apply to "(b)(ii) Breakage of building glass . . . ."  <u>Id.</u>

Section D: "Additional Coverage – Collapse" is separate and independent of Section B.2.k and provides an independent potential basis for coverage of plaintiff's claim.  For these reasons, plaintiff's motion *in limine* (Docket 35) is granted.

### III.   PLAINTIFF'S MOTION REGARDING SPECIAL INTERROGATORIES TO THE JURY

Plaintiff proposes a number of special interrogatories for submission to the jury.  (Docket 38 at pp. 15-17).  Each of these proposed interrogatories must be separately evaluated once the court resolves all the legal issues presented by the parties' pretrial motions.  In addition, the court contemplates developing its own set of special interrogatories after the parties have sufficient time to evaluate the court's rulings.  For these reasons, plaintiff's motion (Docket 37) is denied.

### IV.   DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OR ARGUMENT THAT SECTION D ("ADDITIONAL COVERAGE – COLLAPSE") OF THE POLICY APPLIES

Defendant moves the court to enter an order excluding evidence or argument that Section D ("Additional Coverage – Collapse") of plaintiff's insurance policy provides coverage.  (Docket 43).  Because the court granted

plaintiff's motion *in limine* (Docket 35), defendant's motion *in limine* (Docket 43)

is denied.

## V.   DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE AS EVIDENCE PLAINTIFF'S PROPOSED EXHIBITS #6 (WATERVIDEO1) AND #7 (WATERVIDEO2)

Defendant argues the exhibits are not probative of the events of August

3, 2010.

> Iron Horse seeks to introduce as evidence videos of the Iron Horse premises as simulated rainfall accumulation is poured down the street-access stairwell. The purpose of this evidence, according to Iron Horse, is to show how water escaped from the stairwell and disseminated throughout the premises.  As such, Iron Horse seeks to introduce these video exhibits as demonstrations and not reenactments of the conditions of the actual event.  This distinction is significant because of the different standard applied to demonstrative evidence, as opposed to reenactments.

(Docket 47 at p. 1).  Defendant argues " '[d]emonstrative evidence must be

relevant, probative, and nearly identical' to the conditions that existed at the

time of an event."  Id. (citing Summervold v. Grevlos, 518 N.W.2d 733, 737

(S.D. 1994).  "The videos . . . are dissimilar in at least two fundamental ways

from the conditions of the actual event, thereby precluding admissibility.  First,

the amount of water used in the demonstration is significantly less than the

amount present on August 3, 2010.  Second, the physical set-up of the

premises in the video differs from the actual event."  Id. at p. 2.  Defendant

argues those differences are:

> On August 3, 2010, the door to the utility room was closed, yet in Plaintiff's proposed video exhibits, the door is open.  This discrepancy

13

> is not insignificant because it counteracts the very purpose for which
> Iron Horse seeks to admit the evidence.  In other words, Iron Horse
> wants to use the videos to show how water flowed through the
> stairwell and the premises, but by conducting their demonstration
> with an open utility room door, Iron Horse created conditions that
> altered where water could accumulate or flow.

Id. at pp. 2-3.  "Due to these differences, the video misrepresents the

characteristics of the building and the storm on August 3, 2010."  Id. at p. 3.

For these reasons, defendant argues the videos are more prejudicial than

probative and should be excluded under Fed. R. Evid. 403.  Id.

Alternatively, defendant moves for exclusion of the audio portions of

plaintiff's proposed video exhibits.  (Docket 46).  Plaintiff does not object to

eliminating the audio portion of the exhibits.  (Docket 51 at p. 9)

To create plaintiff's videos, 1,650 gallons of water were dumped in the

stairwell.  (Docket 51 at p. 2).  "The videos are offered to show that the stairwell

is not water-tight, and in fact there are several routes through which water can

escape in great quantities, and these outlets are well below the four foot

threshold of the window sill. . . . Consequently, water would drain before it

reached four feet in depth, but hail kept accumulating."  Id. at pp. 1-2.

"Exhibits 6 and 7 are . . . not intended as a 're-enactment' . . . . Instead, the

purpose was to determine what routes water would take once placed in the

stairwell."  Id. at pp. 2-3.

Plaintiff disputes defendant's assertion the basement door was closed

during the storm as pictures taken immediately after the storm showed the

14

door came open.  Id. at p. 6.  Plaintiff argues that during the storm water was removed by the sump pump, so the video shows water flowing into the sump pump pit and escaping through two other large openings.  Id. at p. 7.   Plaintiff had sand bags in place before the video to slow the flow of water and test the capacity of the sump pit and pump.  (Docket 51 at p. 8).

The court concludes that with proper foundation the videos are not intended to be "re-enactments" but are offered to illustrate various routes by which water may or may not have vacated the stairwell.  The videos are not unduly prejudicial or confusing when balanced against their probative value and are not excluded by Rule 403.  For these reasons the videos are admissible.  The court further finds the audio portion of the videos are not helpful to the jury's understanding of the issues and may create confusion.  The audio portion of the videos will not be played at trial.  Defendant's motion *in limine* (Docket 46) is denied in part and granted in part.

## VI.   DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OR ARGUMENT OF DAMAGES AND PLAINTIFF'S PROPOSED EXHIBIT #4

Defendant moves the court to enter an order excluding evidence or argument relating to plaintiff's alleged damages.  (Docket 49).  Defendant further moves to exclude the portion of plaintiff's proposed exhibit 4 (Current Scene) after the 2:08 point of the video.  Id. at p. 3.

> Exhibit #4 video generally shows the Iron Horse Inn stairwell and interior of the Iron Horse Inn basement (presumably in its present state). However, at the 2:08 point of the video and after, the video

shows scenes of the utility room at the bottom of stairwell. The video shows the sump pump in the utility room. The video also shows several openings along the base of the wall of the utility room. In fact, the videographer . . . goes to great lengths to show close-up views of the openings in the wall of the utility room at several points in the video. Plaintiff's intent is clear. Plaintiff wants to show the jury ways in which the water flowing down the stairs exited the stairwell other than through the window into the Iron Horse Inn. However, the door to the utility room at the bottom of the stairwell was closed at the time of the events on August 3, 2010. Therefore, showing the jury hypothetical routes in which water could have traveled and escaped the stairwell with the utility room door open, will mislead the jury, confuse the issues, and unfairly prejudice United Fire.

Id. Defendant argues exhibit 4 is more prejudicial than probative and should be excluded under Rule 403. Id.

Plaintiff agrees the amount of its damages is irrelevant to the Phase I trial, but the type of damages is relevant to show the nature of the damage—whether water or melting hail. (Docket 53). Plaintiff argues exhibit 4, like exhibits 6 and 7, shows the condition of the stairwell and the sump pit and pump. Id. at p. 3.

The parties stipulated to a bifurcation of trial (Docket 15). Because the first trial is limited to resolving the question of liability, plaintiff's money damages are not relevant. Plaintiff will not be allowed to present money damage figures to the jury. On the other hand, plaintiff is entitled to present evidence regarding the nature and extent of any physical damage to the building. The court finds exhibit 4 to be of the same nature as exhibits 6 and

7.  With proper foundation, exhibit 4 is relevant and is not likely to create

confusion for the jury so as to be excluded under Rule 403.

Defendant's motion *in limine* (Docket 49) is granted in part and denied in

part.

**ORDER**

Based on the above analysis, it is hereby

ORDERED that plaintiff's motion for pre-trial ruling on interpretation of

policy (Docket 22) is granted in part and denied in part.

IT IS FURTHER ORDERED that plaintiff's motion *in limine* to exclude

evidence or argument that the water exclusion applies to preclude coverage

(Docket 35) is granted.

IT IS FURTHER ORDERED that plaintiff's motion regarding special

interrogatories to the jury (Docket 37) is denied without prejudice.

IT IS FURTHER ORDERED that defendant's motion *in limine* to exclude

evidence or argument that section D ("Additional Coverage – Collapse") of the

policy applies (Docket 43) is denied.

IT IS FURTHER ORDERED that defendant's motion *in limine* to exclude

plaintiff's proposed exhibits 6 and 7 (Docket 46) is granted in part and denied

in part.

IT IS FURTHER ORDERED that defendant's motion *in limine* to exclude evidence or argument of damages and plaintiff's proposed exhibit 4 (Docket 48) is granted in part and denied in part.

Dated February 4, 2014.

BY THE COURT:

/s/ *Jeffrey L. Viken*

JEFFREY L. VIKEN
CHIEF JUDGE